MEGHAN BLANCO (238171)
LAW OFFICES OF MEGHAN BLANCO
    28202 Cabot Road, Suite 300
    Laguna Niguel, California 92677
    Telephone:   (949) 296-9869
    Facsimile:    (949) 606-8988
    E-mail:   mblanco@meghanblanco.com

Attorney for MOUSTAPHA MOUSTAPHA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-CR-168-MCS |
|---|---|
| Plaintiff, | DEFENDANT MOUSTAPHA'S SUPPLEMENTAL MOTION IN LIMINE TO PRECLUDE THE GOVERNMENT FROM UTILIZING EVIDENCE OR CI/EXPERT TESTIMONY THAT WAS NOT PRODUCED AND/OR DISCLOSED PRIOR TO THE AUGUST 5, 2024 STATUS CONFERENCE, INCLUDING TESTIMONY FROM CI WHOM COUNSEL, IN GOOD FAITH, BELIEVES IS ON DOJ'S TERRORIST LIST. SUCH AN ORDER IS NECESSARY TO PREVENT A MISCARRIAGE OF JUSTICE, BRADY VIOLATIONS, AND MR. MOUSTAPHA FROM HAVING TO CHOOSE BETWEEN A SPEEDY TRIAL AND A FAIR ONE |
| v. | |
| MOUSTAPHA MOUSTAPHA, | |
| Defendant. | |

    Defendant Moustapha, by and through his counsel or record, Meghan Blanco, files the attached supplemental motion in limine.

//

//

//

1

This motion is based on the previously filed motion in limine, the records and files in this case, and such oral or documentary evidence as may be presented at the hearing on the government's motion and during trial.

Respectfully Submitted,

Dated: August 10, 2024

*//s// Meghan Blanco*
MEGHAN BLANCO
COUNSEL FOR DEFENDANT

## MEMORANDUM OF POINTS AND AUTHORITIES

I. Introduction

When the parties appeared for the August 5, 2024, status conference, the government had produced just over 200 pages of discovery and a handful of videos. None of the discovery provided to defense counsel prior to the August 5, 2024, status conference was admissible at trial. That is because the government utterly failed to comply with its discovery obligations. It failed to make a single expert disclosure. It failed to provide any expert discovery besides two single-page DEA lab summaries. It failed to provide CI discovery (or even seek a protective order that would allow them to do so). It failed to provide forensic evidence, like telephone dumps. It failed to provide photographs of anything, including search photographs. It failed to provide videos taken during searches. It failed to produce all investigative reports in the case, including ones written before Mr. Mustapha was arrested. It failed to disclose all investigative warrants and applications obtained in the case, or their results. And it failed to provide the vast majority of DEA lab reports (over a hundred pages have been produced in the past two days). To make up for its numerous, inexcusable failures, the government has made significant, last-minute discovery productions consisting of information that has been in its possession since

January and February of this year. The discovery produced in the past two days increased the total volume of discovery by more than three-fold. But even now, one court day away from trial, the government has not fully complied with its discovery obligations. Yesterday it advised counsel of its intent to test-fire guns that agents seized from the Malibu Residence on February 1st (apparently the prosecution was unaware, until they were alerted by defense counsel, that they needed to prove the items seized were, in fact, forearms.). And just hours ago, the government advised counsel of its intent to call a CI as a witness at trial. Although the government has not disclosed the CI's identity or made any CI disclosures, counsel believes that the CI is an individual who is currently on DOJ's terrorism watch list, who has sustained a terrorism-related conviction, as evidenced by publicly available district and appellate court decisions, and until very recently, was living in Lebanon, reportedly continuing to engage in Hezbolah-related activities. Trial is one court day away, and the government is still compiling discovery that should have been produced at the outset of this case.

This is not a complex case. There is simply no excuse for late discovery of this magnitude. At this late date, the case should be dismissed for failure to comply with discovery obligations.

II. Argument

Brady teaches that the failure to turn over exculpatory evidence is a matter of due process: "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id. See also Hein v. Sullivan*, 601 F.3d 897, 906 (9th Cir. 2010) (*quoting Silva v. Brown*, 416 F.3d 980, 985 (9th Cir. 2005)). The prosecutor's duty to disclose Brady material exists whether or not the information is requested by the defense. *See Paradis v. Arave*, 240 F.3d 1169, 1176 (9th Cir. 2001) (*citing United States v. Bagley*, 473 U.S. 667, 682 (1985)). When evidence is exculpatory, *Brady* trumps even the work-product privilege. *See Goldberg v. United States*, 425 U.S. 94, 108 (1976) (holding statements discoverable even though they constituted work product of government attorneys). There are three essential components to a claim of a Brady violation: (1) the evidence was favorable to the accused; (2) it was suppressed by the prosecutor; and (3) it was material. S*ee, e.g., Hein v. Sullivan*, 601 F.3d 897, 906 (9th Cir. 2010); *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007) (en banc).

As to the first prong, "Brady encompasses impeachment evidence, and evidence that would impeach a central prosecution witness is indisputably favorable to the

5

accused." *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009) (*citing Giglio v. United States*, 405 U.S. 150, 154 (1972)). *See, e.g., United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) ("Brady/Giglio information includes material … that bears on the credibility of a significant witness in the case.").

As to the second prong, "suppression," a Brady violation occurs whenever "favorable evidence known to police or the prosecution is not disclosed, either willfully or inadvertently." *United States v. Lopez*, 577 F.3d 1053, 1059 (9th Cir. 2009) (emphasis provided). Indeed, "[t]he term 'suppression' does not describe merely overt or purposeful acts on the part of the prosecutor; sins of omission are equally within Brady's scope." *Price*, 566 F.3d at 907. In short, the terms suppression, withholding, and failure to disclose all "have the same meaning for *Brady* purposes." *Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002).

Importantly, a prosecutor need not have actual knowledge of the suppressed evidence for a Brady violation to occur. Legally, there is no distinction between information known to the prosecutor, his or her office, and law-enforcement agencies. The law imputes knowledge to the prosecutor in each case. *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995). *See also Giglio*, 405 U.S. at 154. As the en banc Court put it in Carriger v. Stewart, 132 F.3d 463, 479-80 (9th Cir. 1997) "actual awareness (or

lack thereof) of exculpatory evidence in the government's hands … is not determinative of the prosecution's disclosure obligations. Rather, the prosecution has a duty to learn of any exculpatory evidence known to others acting on the government's behalf."

The third prong for a Brady violation is materiality. Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). See also Kyles v. Whitley, 514 U.S. 419, 433-34 (1995). *See also Browning v. Baker*, 875 F.3d 444, 464 (9th Cir. 2017).

The Court may find this "reasonable probability" even where the remaining evidence would have been sufficient to convict the defendant. *Strickler*, 527 U.S. at 290. Moreover, a "reasonable probability" may exist even without a finding that the outcome would more likely than not have been different. *See Kyles v. Whitley*, 514 U.S. at 434. Instead, "[a] 'reasonable probability' of a different result [exists] when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id. (quoting Bagley*, 473 U.S. at 678). See also *United States v. Sedaghaty*, 728 F.3d 885, 900 (9th Cir. 2013) ("In evaluating materiality, we focus on whether the

withholding of the evidence undermines our trust in thefairness of the trial and the resulting verdict.").

III. Conclusion

For the foregoing reasons, the Court should grant Mr. Moustapha's motion.

Respectfully submitted,

Dated: August 10, 2024

                                                *//s// Meghan Blanco*
                                                MEGHAN BLANCO
                                                COUNSEL FOR DEFENDANT